UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMY H.,[1]

                    Plaintiff,                    DECISION AND ORDER

-vs-
                                                 24-CV-0990-MAV

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

---

## INTRODUCTION

In October 2024, Amy H. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) and § 1383(c), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 10 (Plaintiff); ECF No. 11 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 10] is granted. The Commissioner's motion [ECF No. 11] is denied.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

[2] The regulations governing the evaluation of a claimant's eligibility for DIB under Title II of the Social Security Act are found in Part 404 of Title 20 of the United States Code of Federal Regulations. The regulations governing the evaluation of a claimant's eligibility for SSI benefits are found in Part 416. Because the relevant regulations in both Parts are practically identical, citations in this decision to regulations in Part 404 should be read to also reference the regulations applicable to SSI benefits in Part 416 unless otherwise indicated.

history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Applications

Plaintiff filed her application for DIB and SSI in October 2021, alleging a disability onset date of May 28, 2018. Administrative Record ("AR"), 304–324,[3] ECF No. 5. She claimed her ability to work was limited by seizures, migraines, depression, bipolar disorder, anxiety, fibromyalgia, and irritable bowel syndrome. AR at 343. In March 2022, the Commissioner found that Plaintiff was "not disabled," and her claim for DIB and SSI payments was denied. AR at 69–104. Plaintiff requested a reconsideration of the initial SSI determination, and in September 2022 was again found "not disabled." AR at 105–48.

After the Commissioner denied her applications at the initial level and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR at 204. Plaintiff's request was granted, and she appeared with her attorney for a hearing via telephone on September 28, 2023. AR at 38–68. During the hearing, Plaintiff testified that she had a part-time job working two days a week because "that's all I can handle." AR at 46. When the ALJ inquired why that was the most she could handle, Plaintiff responded:

> Because right now I don't know how I'm going to feel when I get up in the morning, because my migraines, they just come on . . . . My fibromyalgia, my muscles just tighten up and there's time when I can barely even move.
>
> And just recently . . . I needed to go to the hospital because my colitis . .

---

[3] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

. had such a bad flare-up.

AR at 46–47.

At the close of the vocational expert's ("VE") testimony, Plaintiff's attorney argued that Plaintiff's limitations "go to her ability to stay on task and be able [to be] a reliable employee . . . ." AR at 66. The attorney then summarized Plaintiff's impairments as follows:

> According to her testimony, one of the problems is that, when she's done with working for a day, she's too tired. And the consultative examiner's assessment does not include a test for endurance or fatiguability . . . .
>
> Other than that . . . even though the medical evidence shows that the Topamax and the Lomotrogine have reduced her seizures, she still has them. And they present a danger in terms of any workplace but that would include dangerous or moving machinery.
>
> And as far as her migraines are concerned, the medical evidence shows that those have been reduced, but even with the reduction, it still prevents her from being a reliable employee.
>
> And other than that . . . what's also mentioned in the medical evidence is that she has a back and neck condition. And those things cause pain. And the neck spasms she has . . . might make it difficult for her to perform any sedentary job.

AR at 67.

In a December 15, 2023 decision, the ALJ found that Plaintiff met the insured status requirements for DIB[4] through December 31, 2023, and that she had not engaged in substantial gainful activity since her alleged onset date of March 20, 2019. AR at 22–23.

---

[4] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

Then, at step two of the Commissioner's "five-step, sequential evaluation process,"[5] the ALJ determined that Plaintiff had several severe impairments: seizure disorder, cervicalgia, migraine headaches, anxiety disorder, and depression disorder. AR at 14–19. The ALJ acknowledged that Plaintiff also had the medically determinable impairments of irritable bowel syndrome, gastroesophageal reflux disease, and a left ankle/foot sprain, but found that these impairments were "non-severe" because they caused no more than minimal limitations in her ability to perform basic work activities. AR at 23. Additionally, the ALJ noted that Plaintiff alleged fibromyalgia, but that it was not a medically determinable impairment. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). AR at 23–25. In so doing, the ALJ explained why Plaintiff did not meet the requirements for epilepsy under Listing 11.02, and performed the special technique prescribed by

---

[5] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

20 C.F.R. § 404.1520c for the evaluation of mental impairments. *Id.* In performing the special technique, the ALJ found that Plaintiff had moderate limitation in the areas of interacting with others, and concentrating, persisting or maintaining pace; mild limitation in the area of adapting or managing oneself; and no limitation in the area of understanding, remembering, or applying information. AR at 24. Therefore, because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ concluded that Plaintiff did not meet the criteria for Listing 12.04 (depressive or bipolar disorder), or Listing 12.06 (anxiety disorder). *Id.*

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following restrictions:

> [S]he can occasionally climb ramps and stairs. She can never climb ladders, ropes, and scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She must avoid all hazards and unprotected heights. She is limited to simple routine repetitive work. Her work must be low stress defined as occasional decision making and occasional changes in work setting. She can occasionally interact with coworkers and the public.

AR at 25–29.

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a hair stylist or as a receptionist. AR at 29. However, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, and found that Plaintiff could perform the requirements of other representative occupations that existed in significant numbers in the national economy, such as a marker, routing clerk, and housekeeper. AR at 30. Therefore, the

ALJ found that Plaintiff was not disabled, and not entitled to DIB or SSI payments. AR at 31.

On August 20, 2024, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. AR at 1–6. The ALJ's December 2023 decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See also* 42 U.S.C. § 1382c(a)(3)(A) (adopting the same definition of "disabled" for SSI eligibility).

Where an individual's application for DIB or SSI has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. *See also* 42 U.S.C. § 1383(c)(3) (authorizing judicial review of SSI determinations as provided in § 405(g)). The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate

6

such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which

would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In her motion for judgment on the pleadings, Plaintiff presents two issues for the Court's review, which the Court will consider out of order for ease of discussion. For one, Plaintiff argues that the ALJ failed to properly evaluate her fibromyalgia at step two under Social Security Ruling 12-2p. ECF No. 10-1 at 16–18. In addition, Plaintiff argues that the ALJ erred by failing to reconcile the limitations caused by Plaintiff's need for frequent medical treatment with his RFC formulation. *Id.* at 13–16. The Commissioner, on the other hand, maintains that the ALJ's decision is free from legal error and supported by substantial evidence. ECF No. 11-1.

## I.   The ALJ's Step Two Fibromyalgia Analysis

As indicated above, the ALJ acknowledged at step two of the five-step sequential evaluation that Plaintiff alleged fibromyalgia. AR at 23. In assessing Plaintiff's allegations, the ALJ stated in relevant part that:

> The claimant alleges fibromyalgia. However, pursuant to SSR 12-2p this is not a medically determinable impairment. Consultative examiner, Hon[g]bi[a]o Liu, noted the claimant has 4 trigger points including 2 in her neck and 1 in her back and hip [citing AR at 794–95]. The requirements of SSR 12-2p are not met. The physical exam findings and treatment notes do not support the required trigger point findings. There are some in the neck and trapezius area, but not the number required (Exhibits 5F; 12F; 21F; 27F).

AR at 23. Plaintiff argues that this determination was in error because the ALJ only applied the first of two sets of criteria identified by SSR 12-2p, and ignored the other. ECF No. 10-1 at 16–18. Had the ALJ examined the second set of criteria, Plaintiff

argues, he would have found that Plaintiff met its requirements. *Id.* at 17. Thus, Plaintiff asks that her case be remanded for further proceedings.

**A. Legal Principles**

The ALJ's findings at any step in the five-step sequential evaluation are administrative determinations – i.e., legal conclusions – based on the medical and nonmedical evidence in the record. *See, e.g., Williams,* 859 F.2d at 256. In order for an ALJ to conclude at step two that a claimant has a medically determinable physical or mental impairment ("MDI"), the "impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Therefore, the existence of each impairment "must be established by objective medical evidence from an acceptable medical source," and may not be established solely by a claimant's "statement of symptoms, a diagnosis, or a medical opinion . . . ." *Id.* The claimant bears the burden of establishing that he or she has an MDI. *Woodard v. Berryhill,* No. 3:17-CV-1124, 2018 WL 3536084, at *4 (D. Conn. July 23, 2018).

Fibromyalgia is a unique condition that is based almost exclusively on subjective complaints of pain, with no objective tests that conclusively confirm the disease. *Takiea T. v. Comm'r of Soc. Sec.,* No. 1:22-CV-138 (JGW), 2025 WL 1125306, at *4 (W.D.N.Y. Apr. 16, 2025) (citing *Green-Younger v. Barnhart,* 335 F.3d 99, 108 (2d Cir. 2003)). Because the condition is so unique, the Commissioner issued Social Security Ruling 12-2p ("SSR 12-2p") to clarify the factors the ALJ must consider to determine whether a claimant has an MDI of fibromyalgia. *See Evaluation of*

*Fibromyalgia*, SSR 12-2p, 2012 WL 3104869 at *2–3 (S.S.A. July 25, 2012).

First, a physician must diagnose fibromyalgia. *Id.* at *2. Second, that diagnosis cannot be inconsistent with the other evidence in the case record. *Id.* Third, the diagnosing physician must "provide" evidence that the claimant meets either the 1990 criteria or the 2010 criteria set forth by the American College of Rheumatology ("ACR") for the classification of fibromyalgia. *Id.*

The 1990 ACR criteria include: a history of widespread pain, at least eleven positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded. *See Janine H. v. Comm'r of Soc. Sec.*, No. 19-CV-1432-FPG, 2021 WL 1185872, at *3 (W.D.N.Y. Mar. 30, 2021) (quoting *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058-MJR, 2019 WL 1109573, at *4 (W.D.N.Y. Mar. 11, 2019)). The 2010 criteria include: a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and evidence that other disorders that could cause these repeated manifestations were excluded. *Id.*

If the ALJ determines that the claimant has an MDI of fibromyalgia, he must consider that impairment throughout the remainder of the five-step sequential evaluation process. SSR 12-2p, 2012 WL 3104869 at *2.

**B. The ALJ's Analysis of Plaintiff's Fibromyalgia at Step Two**

Although the ALJ's discussion regarding Plaintiff's alleged fibromyalgia in the present case was brief, it was adequate to allow the Court to "glean the rationale of an ALJ's decision," and find it in accord with the appropriate legal standards and

supported by substantial evidence. *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

In her papers, Plaintiff does not identify any physicians who diagnosed her with fibromyalgia other than consultative medical examiner Hongbiao Liu, M.D., who examined Plaintiff only once. AR 792–96. Nor, following a review of the record, does the Court find one. While Plaintiff's physical therapy records consistently indicate a "medical history" including fibromyalgia (*e.g.*, AR a 910–1088), and an April 2021 visit to her primary care physician, Yellamraju Kumar, M.D., indicated that he would do further testing due to fibromyalgia symptoms (AR at 1386), there do not appear to be any other diagnoses of fibromyalgia. Even in the records from the Dent Neurologic Institute, which provided Plaintiff with dozens of Botox treatments and trigger point injections between 2019 and 2023, the consistent diagnosis was "Myalgia of auxiliary muscles, head and neck" (*e.g.,* AR at 1450, 1707), which is not the same as fibromyalgia. *See, e.g., Dawn C. v. Comm'r of Soc. Sec.,* No. 23-CV-00689-MJR, 2026 WL 587703, at *4 (W.D.N.Y. Mar. 3, 2026) (pointing to a non-examining medical expert who opined that despite evidence of a claimant's lumbar disc disease, obesity, hypertension, and myalgia, "the evidence does not support a diagnosis of fibromyalgia.").

Given that Dr. Liu was the only physician in the record diagnosing fibromyalgia,[6] SSR 12-2p required the ALJ to look to Dr. Liu for the evidence

---

[6] The Commissioner argues that Dr. Liu's consultative report did not include a diagnosis of fibromyalgia, but simply repeated Plaintiff's statements to him that she had a "history of chronic pain, fibromyalgia" . . . . ECF No. 11-1 at 12. For the reasons below, even giving Plaintiff the benefit of the doubt in this regard her argument fails.

required to satisfy the fibromyalgia criteria. *See, e.g., Nicole P. v. Comm'r of Soc. Sec.*, No. 20-CV-6576MWP, 2022 WL 2533346, at *4 (W.D.N.Y. July 7, 2022) (quoting SSR 12-2p, 2012 WL 3104869 at *2; internal quotation marks omitted) ("'[t]he evidence must document that the physician reviewed the person's medical history and conducted a physical exam' . . . . The Commissioner will 'review the physician's treatment notes to see if they are consistent with the diagnosis of [fibromyalgia], determine whether the person's symptoms have improved, worsened, or remained stable over time . . . .'"). Yet not only are there no treatment notes from Dr. Liu or any indication that Dr. Liu reviewed Plaintiff's medical history, but the evidence he reports from his exam is insufficient to meet either the 1990 or 2010 ACR criteria.

Most obviously, Dr. Liu's findings of only four trigger points indicated that Plaintiff did not satisfy the 1990 ACR criteria, as the ALJ expressly pointed out.[7] AR at 23. Equally as important to satisfying either the 1990 or the 2010 ACR criteria, Dr. Liu did not provide evidence that other disorders that could cause the repeated symptoms or signs of fibromyalgia were excluded. SSR 12-2p, 2012 WL 3104869 at *3. As the Commissioner points out, SSR 12-2p states that:

> Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from [fibromyalgia]. Therefore it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders . . . . [such as] imaging and other laboratory tests [for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).

---

[7] SSR 12-2p notes that the 1990 ACR criteria require "at least 11 positive tender points", on both the right and the left of the body, both above and below the waist. SSR 12-2p, 2012 WL 3104869 at *3.

*Id.*; *see also*, ECF No. 11-1 at 14–15. Yet Dr. Liu did not indicate that he had even considered, let alone performed, any imaging or tests to rule out other disorders as the cause of Plaintiff's symptoms of fibromyalgia.

Plaintiff argues that the ambiguity in the record regarding her fibromyalgia revealed a gap in the record which the ALJ had a duty to reconcile, perhaps by recontacting Dr. Liu for clarity on his diagnosis. She also argues that because the ALJ did not mention the 2010 ACR criteria or Dr. Liu's efforts (or lack thereof) to exclude other disorders, affirming the ALJ on those grounds would constitute an impermissible *post hoc* rationalization of the ALJ's decision.

With respect to the first point, the Court agrees with the Commissioner that "a deficiency in reasoning by a treating physician is not the same as a gap in treatment records." *Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022). Here, the record runs to over 1700 pages, including voluminous records from Plaintiff's relevant treatment providers Dent Neurologic Institute and Alden Physical Therapy, and her primary care physician, Dr. Kumar, from between 2019 and 2023. Thus, there is no gap in the administrative record; there is simply no adequate evidence that would allow the ALJ to find an MDI under 20 C.F.R. § 404.1521 or SSR 12-2p.

As to the second point, regarding *post hoc* rationalization, the Court agrees that it may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Elisa Q. R. v. Bisignano*, 792 F. Supp. 3d 309, 324 (D. Conn. 2025) (citing, *inter alia*, *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Nevertheless, the Court finds that the treatment of the evidence *is* apparent from the ALJ's decision:

13

not only did the ALJ point out that the "[t]he requirements of SSR 12-2p are not met" with respect to Plaintiff's allegation of fibromyalgia, but he also made a concurrent finding based on the same record that Plaintiff's cervicalgia, seizure disorder, and migraine headaches were severe medically determinable impairments that limited Plaintiff's ability to work. AR at 23.

The ALJ explored these severe impairments and the consequent limitations on Plaintiff's ability to work in his RFC discussion. With respect to Plaintiff's cervicalgia, he noted that the treatment notes consistently suggested the presence of cervicalgia, between September 2019 (AR at 27 citing AR 726) and May 2023 (*Id.* citing AR at 1545–1591), and supported limiting Plaintiff to light exertion and on postural movements. The ALJ also assessed Plaintiff's migraine disorder, dating from treatment as early as December 2018 (AR at 27 citing AR at 766), through May 2023 (AR at 28 citing AR at 1656), and found the evidence supported limiting claimant to simple light work, with limited postural movement and avoidance of hazards. Notably, even as late as June 2023, nearly four years into Plaintiff's treatment with Dent Neurologic Institute, there is no diagnosis of fibromyalgia. *See, e.g.,* AR at 1588. Based on the RFC discussion and the record evidence, then, it is apparent that the ALJ concluded that the evidence of record pointed to the severe impairments of cervicalgia and migraine headaches, and not fibromyalgia.

Accordingly, the Court finds Plaintiff's argument that the ALJ committed reversible error by finding that Plaintiff did not have the MDI of fibromyalgia is without merit.

14

## II. The Frequency of Plaintiff's Treatment

In addition, Plaintiff notes that she is "engaged in extensive" treatment to help manage her pain conditions, including doctor check-ups, Botox injections, trigger point injections, nerve blocks, and physical therapy, but that the ALJ's RFC discussion failed to address the sheer volume of regular treatment and its impact on her ability to maintain a regular work schedule. ECF No. 10-1 at 13–16. Likening her case to that of the claimant in *Scott G. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1482-DB, 2021 WL 958452 (W.D.N.Y. Mar. 15, 2021), Plaintiff noted that the court in *Scott G.* held that it appeared likely that the claimant's treatment schedule of three or more medical treatments a month across multiple treatment teams could interfere with his ability to work "'which needed to be considered in the ALJ's analysis.'" *Scott G.*, 2021 WL 958452 at *4. Likewise, Plaintiff argues that her case needs to be remanded for further consideration of her frequency of treatment. ECF No. 10-1 at 13–15.

The regulations provide that in order to make a decision as to whether a claimant is disabled, the ALJ must consider *all* of the relevant evidence in that claimant's case record. 20 C.F.R. § 404.1520(a)(3). This includes "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication) . . . ." *Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling 96-8p ("SSR 96-8p"), 1996 WL 374184, at *5 (S.S.A. July 2, 1996). Therefore, "[a]bsenteeism due to the frequency of treatment is a relevant factor [for the ALJ's consideration] so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded." *Bellinger v. Comm'r of Soc.*

15

*Sec.*, No. 3:17-CV-1692 (MPS), 2018 WL 6716092, at *2 (D. Conn. Dec. 21, 2018) (quoting *Griffin v. Comm'r of Soc. Sec.*, No. 2:15-CV-13715, 2017 WL 991006, at *2 (E.D. Mich. Mar. 15, 2017)). This is because "excessive impairment-related absenteeism may render an unskilled[8] worker unemployable." *Renee S. v. Comm'r of Soc. Sec.*, No. 20-CV-1546S, 2022 WL 2841916, at *5 (W.D.N.Y. July 21, 2022) (citing *Arnold v. Comm'r of Soc. Sec.*, 17-CV-987S, 2019 WL 2521179, at *6 (W.D.N.Y. June 19, 2019) (collecting cases)).

As documented by the ALJ in the instant case, the severe symptoms of Plaintiff's cervicalgia and migraine headaches are eased by trigger point injections, Botox treatments and, in some instances, nerve blocks. *See* AR at 27–28 (citing, *inter alia,* AR at 534 ("The patient has found that trigger point injections have been helpful in decreasing the tightness to the cervical musculature and decreasing headache symptoms."), 1094 ("Since starting botox, her migraine severity is 50–60% reduced."), and 1656 (administering nerve blocks to occipital neuralgia)). Further, the VE testified that "no more than one day a month [of absenteeism] on a consistent basis, maximum eight days a year, would be tolerated" by an employer for an unskilled employee. AR at 66. Yet the most recent records from the Dent Neurologic Institute indicate that Plaintiff's treatment requires appointments approximately every two weeks. *See, e.g.,* AR at 1547 (April 27, 2023), 1558 (May 11, 2023), 1562 (May 25, 2023), 1566 (June 6, 2023), 1588 (June 30, 2023), 1686 (July 13, 2023), 1696 (July 31, 2023), 1690 (August 1, 2023), 1703 (August 28, 2023), 1707 (September 1, 2023).

---

8 The VE in this case noted that while Plaintiff's past relevant work involved skilled work, the representative jobs in the national economy that she had identified that Plaintiff could perform were all "unskilled."

16

Additionally, Dr. Liu stated in his consultative exam report that Plaintiff "may experience interruptions in scheduled activities due . . . [to] therapy [for] migraine headaches." AR at 795.

To be sure, "[a]n individual should not be found disabled simply because of frequent medical visits—only if those visits are medically necessary to treat the noted impairments and interfere with the ability to work." *Scott G.*, 2021 WL 958452 at *4 (citing *Bellinger*, 2018 WL 6716092, at *2). Moreover, it is Plaintiff's duty to prove a more restrictive RFC than that formulated by the ALJ, and she here cites no evidence in the record to demonstrate that she would need to miss an entire day of work for each appointment, or that her appointments could not be scheduled differently so as to prevent excessive absenteeism. *See James D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00984, 2023 WL 7222137, at *5 (W.D.N.Y. Nov. 2, 2023) (citing *Alysha C. v. Comm'r of Soc. Sec.*, No. 20-CV-1178-FPG, 2022 WL 464239, at *6 (W.D.N.Y. Feb. 15, 2022); *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018)).

However, "'[w]here the ALJ has made no findings about the limitations caused by the claimant's need for treatment, courts have remanded because it is not the role of the court to speculate as to the ALJ's rationale.'" *Scott G.*, 2021 WL 958452, at *4 (quoting *Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *5 (D. Conn. Dec. 1,2017). The record evidence in the instant case, including at least one medical opinion, suggests that Plaintiff may need to be absent from work to receive treatment for her severe impairments at relatively frequent intervals, but that absenteeism of over eight days per year would prove work preclusive. At the same time, the ALJ's written decision does not include any discussion or findings

17

concerning what limitations, if any, Plaintiff's treatment regimen poses to her ability to meet the time-off-task and attendance requirements of the unskilled work the ALJ found she could perform consistent with her RFC.

In the absence of such findings for this Court to evaluate, and given the requirement that such limitations be fully considered in forming Plaintiff's RFC, this Court finds that remand is required on the narrow ground that Plaintiff's condition may require absences from work for treatment and this should be addressed by the ALJ. *Renee S. v. Comm'r of Soc. Sec.*, No. 20-CV-1546S, 2022 WL 2841916, at \*5 (W.D.N.Y. July 21, 2022) (citing *Scott G.*, 2021 WL 958452 at \*4).

## CONCLUSION

For the foregoing reasons, Plaintiff Amy H.'s motion for judgment on the pleadings [ECF No. 10] is granted, and the Commissioner's motion for judgment on the pleadings [ECF No. 11] is denied. The Commissioner's decision is reversed, and the matter is remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this decision. The Clerk of Court is directed to enter judgment on behalf of the Plaintiff and close this case.

SO ORDERED.

DATED:     March ____, 2026
           Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge

18